Ray MARSHALL, Secretary of Labor, Plaintiff,

v.

OFFICE AND PROFESSIONAL EMPLOYEES UNION, LOCAL 2, Defendant.

Civ. A. No. 78–1347.

United States District Court, District of Columbia.

Jan. 8, 1981.

John Oliver Birch, Asst. U. S. Atty., Washington, D. C., for plaintiff.

Joseph E. Finley, Princeton, N. J., Isaac N. Groner, Cole & Groner, P. C., Washington, D. C., for defendant.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment. The plaintiff Secretary of Labor (the Secretary) instituted this action against Local No. 2 of the Office and Professional Employees Union (Local 2) seeking to void an election held on January 31, 1978 because of a number of violations of

the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq.* (LMRDA). Owing to defects in the procedures by which notice was given of the nomination process and the election balloting, the Secretary alleges that Local 2's infractions of the LMRDA may have affected the outcome of the election. Additionally, the Secretary claims that his investigation of the 1978 election produced evidence of illegal contributions by an employer to the campaign of one candidate for office.

The parties have agreed to much of the factual setting concerning this election. The alleged violations committed by Local 2 fall into three categories—failure to give reasonable notice of the process for nomination (nomination violations), failure to mail adequate notice to union members of the election (election violation), and the use of employer money for a candidate for union office (employer money violation).

The parties agree on the facts of one nomination violation, that at the Merkle Press in Glendale, Maryland, Local 2's steward did not post notice of a meeting to be held on January 3, 1978 for purposes of nominating candidates for union office. Thirty-four members of the union were employed by Merkle Press at the time of the 1978 election.

The Secretary alleges two other nomination violations, claiming that Local 2 failed to post notices of the nomination meeting both at the National Bank of Washington (NBW), 4340 Connecticut Avenue, Washington, D.C. and at the Bakery and Confectionery Workers Welfare and Pension Fund Office, 1828 L Street, N.W., Washington, D. C. As to the latter, a disputed question of fact remains because the defendant produced an affidavit of the shop steward at the Pension Fund Office, Margareta Crampton, who declared that notice was posted there. As to the NBW violation, the defendant attacks the credibility of the Secretary's supporting affidavit on the grounds that the affiant Gwendolyn Miller is inarticulate, but the defendant offers no contrary evidence.

Failure to post notice of the nomination process, the Secretary avers, violates the express command of the LMRDA that "a reasonable opportunity shall be given for the nomination of candidates ...." 29 U.S.C. § 481(e).

The alleged election violation is simply stated. Local 2 concedes that at the time of the 1978 election, its membership numbered 5,022 and that notice of the election was sent out only to 4,753 members. The Secretary argues that the shortfall in the amount of notices sent violates the LMRDA's requirement that "[n]ot less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address...." 29 U.S.C. § 481(e).

Finally, the defendant concedes that a union member used duplicating equipment belonging to an employer to reproduce a one page flyer directed at her fellow employees urging them to vote for certain candidates. In duplicating 160 copies of the flyer, Local 2 admits, the union member used $6.40 of employer "money." The Secretary claims that this use of employer resources violates 29 U.S.C. § 481(g), which provides that "no moneys of an employer shall be contributed or applied to promote the candidacy of any person in an election subject to" the LMRDA.

■ In order for a court to find that a union election should be nullified on the ground that it violated the LMRDA, the Secretary must show 1) that the union's conduct constitutes a statutory violation, and 2) that the violation may have affected the outcome of the election. Once the Secretary shows that a violation of the LMRDA occurred, then a prima facie case is established that the violation may have affected the outcome of the election, and the burden falls to the defendant to show that whatever violation occurred did not affect the election results. *Wirtz v. Hotel, Motel and Club Employees Union, Local 6*, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968).

■ The Secretary has shown that the union violated the LMRDA in failing to

post notice of the nomination meeting at the Merkle Press and at the NBW. Local 2 claims, however, that this lack of notice did not affect the election because everyone who wanted to be nominated for union office was in fact nominated. Local 2 points to an answer filed by the Secretary to one of the defendant's interrogatories, where the Secretary initially conceded that no one who wanted to be nominated was denied the opportunity. Plaintiff's Answers to Defendant's Interrogatories No. 6(a). Gwendolyn Miller, an employee of the NBW, however, indicated in her deposition that she would have nominated someone else for office had she known of the meeting. The defendant attacks Miller's credibility because her deposition was difficult to comprehend and she has appeared uninterested in union affairs. The Court, of course, cannot at this stage of the proceeding resolve the credibility of Ms. Miller, but her lack of articulateness does not make her untrustworthy. Simply put, evidence that additional candidates for union office may have been nominated is uncontested.

■ As to the election violation, Local 2 requests that the Court excuse its conduct because despite the gap between the number of notices mailed out and the actual number of union members, it acted to the best of its ability. The state of the union's membership records is not a concern for the Court in this proceeding, because the statute clearly and unambiguously requires that notice of the election be sent to the last known home address of each union member. Congress clearly contemplated that unions' memberships will constantly change when it included the provision that notice be sent to the last known home address. The union at the time of the election had 5,022 members and sent out only 4,753 notices. Thus, there are 269 members who have a home address somewhere in the union records who were not mailed notices. The Act does not require that the members receive notice; it only mandates that notice be sent.

The question then arises whether the failure to notify 269 members of the election may have affected its outcome. A simple examination of the election results answers this question. Fifteen members of the Executive Board were to be elected, and the individual who was sixteenth in the balloting fell only six votes short of the fifteenth person, the last to be elected. Under either of the standards proposed to the Court to determine whether a violation may have affected the election's outcome, whether the violation "reasonably may have affected the outcome," *see Marshall v. Local 1010, United Steelworkers of America*, 498 F.Supp. 368 (N.D.Ind.1980), or whether the violation numerically affected the outcome of the election, *see Marshall v. American Postal Workers Union*, 486 F.Supp. 79, 82 (D.D.C.1980), it appears clear that the violations aforesaid may have affected the outcome of the election in this case.

■ Finally, as to the employer money violation, the defendant pleads for a *de minimis* exemption to the proscription against the use of employer money in a union election. After all, the defendant claims, only $6.40 of the employer's resources were utilized. The defendant's argument, however, has been considered and rejected in *Shultz v. Local 6799, United Steelworkers of America*, 426 F.2d 969 (9th Cir. 1970), *aff'd* 403 U.S. 333, 91 S.Ct. 1841, 29 L.Ed.2d 510 (1971). There, the Secretary claimed that $13.04 was expended by the union organization in violation of § 481(g), and the Court held that Congress's intent was clear and unambiguous in the statute's language: no money meant no money. *See* 426 F.2d at 972. The defendant union has produced no evidence that refutes the violation, or the inference that the violation has affected the outcome of the election. *Wirtz v. Hotel, Motel and Club Employees Union, Local 6*, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968). Because fourteen of the fifteen candidates endorsed on the flyer won election, an unrefuted inference that the flyer affected the outcome of the election exists.

Thus, it appears that the union violated the LMRDA in failing to post notice of two locations of the nomination meeting of January 3, 1978; in failing to send election notices to all union members; and by one of its members utilizing employer money to

promote the candidacy of individuals seeking union office. Local 2 has failed to carry its burden of showing that these violations did not affect the outcome of the election.

The defendant pleaded with the Court at the argument on the motion to consider the reality and totality of circumstances in deciding these motions. Although the union claims that this case transforms a few incidents, one seemingly minor, into a major lawsuit, Congress has spoken, succinctly and unequivocally, directing that all union elections be fair and orderly, clear of any appearance of impropriety, and aimed at maximum participation from union members. The directive of Congress underlies this decision explicitly in the language of the LMRDA, and defendant's pleas for "reality" can be considered only in recognition of the Congressional mandate.

It appearing that summary judgment is appropriate and that violations of the LMRDA may have affected the 1978 election of Local 2, the January 31, 1978 election of Local 2 will be declared null and void, and the union will be directed to proceed with new elections forthwith under supervision of the Secretary pursuant to the terms of the LMRDA.