Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

INTERNATIONAL ASSOCIATION OF MACHINISTS, LOCAL LODGE 851, Defendant.

No. 84 C 5299.

United States District Court, N.D. Illinois, E.D.

July 25, 1985.

MEMORANDUM OPINION
AND ORDER

ROVNER, District Judge.

This matter is before the Court on the parties' cross-motions for summary judg-

ment. The plaintiff Secretary of Labor ("the Secretary") instituted this action against defendant International Association of Machinists, Local Lodge 851 seeking to void an election held on December 19, 1983 because of an alleged violation of Section 401(e) of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401, *et seq.* ("LMRDA"). The Secretary contends that the defendant's chosen method of notifying its members of the nominations for its December 18, 1983 election of officers denied them a reasonable opportunity for the nominations of candidates in violation of Section 401(e) of the Act, 29 U.S.C. § 481(e),[1] and that the violations "may have affected the outcome" of that election, 29 U.S.C. § 482(c),[2] requiring that its results be set aside. The material facts are not in dispute.

### Facts

Defendant Local 851 is the exclusive bargaining representative of certain employees employed at Caterpillar Tractor Company in Joliet, Illinois ("Caterpillar"). Local 851's membership consists only of employees employed at Caterpillar.

On December 18, 1983 Local 851 conducted an election of officers in accordance with the International Association of Machinists & Aerospace Workers constitution ("constitution") and the bylaws of Local 851. Under its bylaws, Local 851 was to nominate officers at its regularly scheduled membership meeting on November 20, 1983. On October 13, 1983, notices of the November 20, 1983 membership meeting, which contained the notice of the nominations, were posted at Local 851's union hall and on 21 bulletin boards at the manufacturing facilities of Caterpillar. Local 851 chose to notify its members of the nominations meeting solely by this means.

In October 1983, Local 851 was comprised of 4750 members of which 2691 were

---

1. See Appendix A.

2. See Appendix B.

on lay off status. The total membership and number of members on lay off status were not significantly different in September 1983 and remained essentially constant through November 1983. To maintain their union membership in good standing, laid off members were absolved by the constitution from paying the regular monthly dues but were required instead to pay only $.50 per month. To do so, they could either appear each month at Local 851's union hall and pay personally, or they could arrange to have their $.50 monthly dues deducted from their last regular dues check tendered to Local 851 during the last month of their employment, thereby eliminating the necessity of a personal appearance. In October 1983, 2501 of defendant's 2691 laid off members had chosen the second option and therefore were not required to appear at defendant's union hall to pay their $.50 monthly dues to maintain their good standing. Thus, more than half of Local 851's members were on lay off throughout the period of the posting and were not required to appear during the posting at either the defendant's union hall or at the Caterpillar facilities, the two locations chosen for posting.

The November 20, 1983 meeting was attended by 198 members of Local 851, the largest number of members in good standing for the previous five Local 851 nomination meetings. Twenty-five percent of the members present were on lay off status. Forty-six individuals were nominated to run for office. On December 18, 1983 the elections were held, and 1,995 total ballots were cast. The following Local 851 members were elected to office: Dick Hileman, President; Andy Vollner, Vice President; Robert Stonich, Recording Secretary; and Carmen DeNardis, Secretary-Treasurer.

On January 9, 1984 Local 851 member and candidate for Secretary-Treasurer, John Sheridan, protested the results of the December 18, 1983 election of officers. Sheridan alleged, *inter alia*, that Local 851 failed "to send notice of nomination to all members in good standing" in violation of the Constitution and the LMRDA. Not having obtained a final decision with respect to his election protest within 3 calendar months of the filing of his protest, John Sheridan, by letter dated April 21, 1984, filed a timely election complaint with the Secretary. This lawsuit followed when the Secretary filed his complaint in this Court on July 16, 1984.

## Discussion

■ To establish a violation of the LMRDA requiring the nullification of a union election, the Secretary must show: 1) that the union's conduct constitutes a statutory violation; and 2) that the violation "may have affected the outcome of the election." If the Secretary establishes the statutory violation, then a prima facie case is established that the violation may have affected the outcome of the election, and the burden falls on the defendant to prove that the violation did not affect the election results. *Wirtz v. Hotel, Motel and Club Employees Union, Local 6*, 391 U.S. 492, 88 S.Ct. 1743, 20 L.Ed.2d 763 (1968).

This Court is satisfied that the Secretary has established a statutory violation of the LMRDA in the notice of nominations provided by Local 851 here. The parties do not dispute that Section 401(e) and its interpretive regulations require that the union provide reasonable notice to its members of the meeting at which nominations are to take place. Local 851 argues that its notice was reasonable in two respects.

First, Local 851 contends that even aside from its posting of notices of nominations at its union hall and at Caterpillar, its own bylaws and constitution provide notice to each member. This argument is without merit for several reasons. The LMRDA reflects a congressional policy that all union elections be fair, orderly, free of any appearance of impropriety, and aimed at maximum participation of union members. As such, it does not permit a union to discharge its obligation to provide notice of its nominations meeting by setting forth all necessary notice information within the union's bylaws and constitution. More importantly, the various provisions for the meet-

ing in the bylaws and constitution of this case do not provide the information that a member would need to attend and participate in the nominations meeting because, even though it is possible after some effort at piecing together and construing the various provisions to arrive at the date of the nominations meeting (November 20, 1983), there is no way that even an exceptionally diligent union member can arrive at the time and the place for the meeting. Accordingly, notice from the bylaws and constitution is inadequate.

Second, Local 851 contends that the circumstances of this case prove that notice of the nominations meeting was reasonable. Local 851 argues that during the period from October 18, 1983 to November 20, 1983 (during which notices of the nominations meeting were posted at the union hall and at 21 Caterpillar locations), 167 laid off union members appeared in person at the union hall to pay their $.50 monthly dues, and in addition "numerous" laid off members appeared to accomplish a variety of other tasks. But Section 452.56(a) of the Interpretive Regulations, 29 C.F.R. § 452.56(a), requires that a nominations notice at a minimum be "reasonably calculated to inform *all* members" of the meeting, and Local 851 cannot claim and does not claim that all of its laid off members appeared at its union hall during the relevant period or that it reasonably could have anticipated the appearance of all of its members.

Finally, other courts have held that a violation of the reasonable notice provisions of the LMRDA occurred under circumstances less compelling than here. *See, e.g., Wirtz, supra* (Supreme Court found violation of Section 401(e) because 382 members of the union's total membership of 2700 were not mailed copies of the newspaper containing notice of nominations and elections); *Marshall v. Office and Professional Employees Union Local 2,* 505 F.Supp. 121 (D.D.C.1981) (court found violation where union failed to post notice at two employer locations). Indeed, defendants have conceded in their responsive brief in opposition to the motion for summary judgment that "plaintiff's burden requires only that he prove the existence of one member who did not receive reasonable notification of the nominations meeting, and that defendant's failure to provide that one member with proper notice may have affected the outcome of the election." (Defendant's Responsive Brief at 2–3, citing *Wirtz, supra.*) In light of the fact that at least half of Local 851's members—those who were laid off and who did not appear where notice was posted—may not have received actual or constructive notice of the November 20, 1983 nominations meeting, this Court holds that the method of notification here was not reasonable as a matter of law.

■ Having decided that Local 851's notice of nominations was not reasonable and thus constituted a violation of Section 401(e) of the Act, this Court must decide whether the violation "may have affected the outcome of the election." This question is more troubling because the Secretary has admitted that he is unable to identify a single member who wished to nominate a candidate for office, but did not, or who wished to be nominated as a candidate for office, but was not, because he did not receive notice of Local 851's nominations meeting. Moreover, the individual who protested the results of the elections and who filed a complaint with the Secretary, John Sheridan, did receive notice and was nominated for the position of Secretary-Treasurer. Thus, it appears that his only real complaint is that he lost.

Defendant argues that because its nominations meeting was attended by a larger number of members than were present for the previous five meetings, because 46 candidates were nominated, and because 25% of those present were on lay off status, the outcome of the election could not have been affected because the court can infer that all those who wanted to attend the nominations meeting and nominate a candidate did so. As the Secretary points out, however, it is at least just as likely that, because of the drastic number of lay offs occurring at

the time, those who received notice attended and nominated candidates because of their job security worries. Those who did not receive notice would have attended precisely out of the same concerns. Moreover, the 49 members on lay off status who did attend constituted less than nineteen thousandths (or .19%) of the 2609 members then on lay off status.

Finally, defendant attempts to rebut the Secretary's prima facie case by arguing that its failure to provide notice could not have affected the elections because those members who were on lay off status for more than six months were ineligible to be nominated for office under Local 851's constitution as they had not been "working at the trade" for over six months as required and because it was not necessary for laid off members to attend the nominations meeting to nominate other candidates since Local 851's nomination procedures allowed self-nomination. Neither argument is persuasive. The nomination provisions of Local 851's constitution and bylaws contain no procedure allowing the self-nomination of candidates. The constitution further specifically excludes laid off members from the candidacy eligibility requirement of "working at the trade" as is proper and consistent with the prohibition in the Interpretive Regulations, 29 C.F.R. § 452.41, against forfeiting of a union member's "membership in [a] union or any of the attendant rights of membership merely because he is discharged or laid off." Even if that were not the case, however, it is certainly conceivable that a laid off member who did not attend the nominations meeting because he did not receive notice may have wanted to nominate a member who was not laid off and did not do so simply because he did not know of the time and place of the nominations meeting.

*Wirtz, supra,* places the burden on the defendant union to show by a preponderance of the evidence that a violation of the LMRDA did not affect the outcome of a challenged election. As stated by the court in *Usery v. International Organization of Masters and Pilots,* 92 LRRM 2274, 2278 (S.D.N.Y.1976), *aff'd and modified on oth-*er grounds, *Usery v. International Organization of Masters, Mates & Pilots,* 538 F.2d 946 (2d Cir.1976), under the *Wirtz* rule:

> [O]nce a Section 481 violation has been demonstrated, a very substantial burden falls upon a defendant union. It must show by a preponderance of the evidence that the particular violation did not affect the outcome of the election. Until it does so, the presumption remains that such violation might have had an effect on the results, and this presumption of mere possible influence suffices to warrant a new supervised election.

In *Wirtz,* the Supreme Court reversed the Second Circuit's decision that the application of an invalid candidacy eligibility bylaw did not affect the defendant union's election results. Finding that no "tangible evidence" was offered in rebuttal "against the reasonable possibility that the wholesale exclusion of candidates did affect the outcome," the Supreme Court recognized that the nature and scope of the election violation at issue ultimately made adequate rebuttal evidence unobtainable because, as explained by the Court, it was simply "impossible to know that the election would not have attracted many more candidates but for the by-law." *Wirtz,* 391 U.S. at 508, 88 S.Ct. at 1752. Here too, it may be "impossible" for the defendant union to present adequate rebuttal evidence negating the presumption that the statutory violation "may have affected the outcome of the election," but that is the risk that Local 851 incurred when it did not provide for reasonable notice of the nominations meeting to half its membership, and that is the risk that Congress guarded against when it adopted the "may have affected" language in Section 402(c) of the LMRDA. This Court holds that the statutory violation here may have affected the outcome of the December 18, 1983 elections, requiring that they be nullified.

### Conclusion

Defendant Local 851's motion for summary judgment is denied. The Secretary's

motion for summary judgment is granted. The December 18, 1983 elections for all offices are null and void, and the defendant is hereby ordered to conduct immediately new elections for those offices under the supervision of the Secretary pursuant to the terms of the LMRDA.  It is so ordered.

### APPENDIX A

Section 401(e) of the Act, 29 U.S.C. § 481(e), provides in pertinent part:

In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates....

Section 452.55 of the Interpretative Regulations, 29 C.F.R. § 452.55, provides:

In elections subject to the provisions of Title IV a reasonable opportunity must be afforded for the nomination of candidates.  Although the Act does not prescribe particular forms of nomination procedures, it does require that the procedures employed be reasonable and that they conform to the provisions of the labor organization's constitution and by-laws insofar as they are not inconsistent with the provisions of Title VI.

Section 452.56(a) of the Interpretative Regulations, 29 C.F.R. § 452.56(a), provides in pertinent part:

(a) To meet (the statutory requirement of reasonable opportunity ... for the nomination of candidates") the labor organization must give timely notice reasonably calculated to inform all members of the offices to be filled in the election as well as the time, place, and form for submitting nominations....  In an election which is to be held by secret ballot ... notice of nominations may be given in any manner reasonably calculated to reach all members to nominate the candidates of their choice, so long as it is in accordance with the provisions of the labor organization's constitution or by-laws....  Posting of a nomination notice may satisfy the requirement of a reasonable opportunity for making nominations if such posting is reasonably calculated to inform all members in good standing in sufficient time to permit such members to nominate the candidates of their choice.

### APPENDIX B

Section 402(c) of the Act, 29 U.S.C. § 482(c), provides in pertinent part:

(c) If, upon a preponderance of the evidence after a trial upon the merits, the court finds—

(1) that an election has not been held within the time prescribed by section 401, or

(2) that the violation of section 401 may have affected the outcome of an election, the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and by-laws of the labor organization.  The Secretary shall promptly certify to the court the names of the persons elected, and the court shall thereupon enter a decree declaring such persons to be the officers of the labor organization....